UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
DAVID ROCHELLE,

                                    Plaintiff,

v.

AUTOZONERS, LLC., et al.,

                                    Defendants.
-----------------------------------------------------------X

**OPINION AND ORDER**

21-CV-01220 (PMH)

PHILIP M. HALPERN, United States District Judge:

David Rochelle ("Plaintiff") commenced this action against Autozoners, LLC ("Autozone"), Alldata LLC ("Alldata"), Autozone, Inc. (together with Autozone and Alldata, the "Corporate Defendants")[1], Darryl Delmas ("Delmas"), Jeffrey Spillman ("Spillman"), Amy Maguire ("Maguire"), George Verkamp ("Verkamp"), and Satwinder Mangat ("Mangat") on February 11, 2021, pressing claims of discrimination, retaliation, failure to accommodate, interference, and failure to engage in cooperative dialogue under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., the New York City Human Rights Law ("NYCHRL"),  the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq, and the New York Labor Law ("NYLL"). (Doc. 1).

Plaintiff filed a First Amended Complaint on July 1, 2021 with leave of the Court, which terminated Verkamp and Mangat as defendants in this action. (Doc. 29, "FAC"). The Corporate Defendants, Delmas, Maguire, and Spillman (collectively, "Defendants") are the remaining

---

[1] AutoZoners, LLC is an entity that employs some employees at AutoZone's retail stores. (Doc. 31, "Answer" ¶ 13). Defendants confirm that at all relevant times AutoZoners, LLC was Plaintiff's "employer" within the meaning of the ADA, FMLA, NYSHRL, NYSCHRL, and NYLL. (*Id.* ¶ 27). Defendants further admit that Plaintiff worked for Alldata LLC, a subsidiary of AutoZone, Inc., while employed by AutoZoners, LLC. (*Id.* ¶¶ 12, 54; 56.1 Stmt. ¶ 3).

1

defendants in this action. The FAC alleges eleven claims for relief against one or more Defendants: (i) retaliation under the FMLA; (ii) interference under the FMLA; (iii) discrimination under the ADA; (iv) retaliation under the ADA; (v) failure to provide reasonable accommodation under the ADA; (vi) discrimination under the NYSHRL; (vii) failure to accommodate under the NYSHRL; (viii) discrimination under the NYCHRL; (ix) failure to accommodate under the NYCHRL; (x) failure to engage in cooperative dialogue under the NYCHRL; and (xi) retaliation under the NYLL. (*Id.*).

Pending before the Court is Defendants' motion for summary judgment seeking dismissal of Plaintiff's claims asserted against them in the FAC. Defendants served their motion for summary judgment under Federal Rule of Civil Procedure 56 (Doc. 59; Doc. 60, "Def. Br.") on November 21, 2022. Plaintiff served his opposition (Doc. 62, "Pl. Br."; Doc. 63, "Rochelle Decl."; Doc. 64, "Lee Decl."; Doc. 65, "Stockman Decl.") on December 21, 2022, and the motion was fully submitted with the filing of the motion, a Rule 56.1 Statement (Doc. 61, "56.1 Stmt."), opposition, and Defendants' reply papers (Doc. 66, "Reply Br.") on January 6, 2023.

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## **BACKGROUND**

The facts recited below are taken from the Amended Complaint, the Rule 56.1 Statement, and the admissible evidence submitted by the parties.[2]

---

[2] Rule 7.1(a)(3) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Local Rules") provides that "[e]xcept for letter-motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court, all motions shall include the following motion papers . . . [s]upporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion." The exhibits that Defendants submitted to the Court on its motion do not include a supporting affidavit and are attached only as exhibits to the memorandum of law. (Doc. 60). While failure to comply with the Local Rules is, on its own, a sufficient ground to warrant denial of a motion, the Court has discretion to overlook a failure to comply with Local Rule 7.1 and exercises such discretion on this motion. *See, e.g., Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 155 (E.D.N.Y. 2016).

On August 31, 2015, Autozone hired Plaintiff to work as a Business Solution Manager ("BSM") in its Alldata division, which provides Original Equipment Manufacturer ("OEM") repair information to the professional automotive industry. (56.1 Stmt. ¶¶ 1-2, 4; Rochelle Decl. ¶ 3). Plaintiff's role as a BSM was essentially that of an outside salesman. (56.1 Stmt. ¶ 4). He sold automotive diagnostic and repair software within a defined territory in the New York area. (*Id.*). Plaintiff was given sales quotas for each of the thirteen periods and four quarters of Alldata's fiscal year, and his primary responsibility was to grow the customer base within his assigned territory to meet or exceed those sales quotas. (*Id.* ¶ 10).

Alldata utilized a disciplinary procedure during Plaintiff's employment, referred to as the Corrective Action Review ("CAR") process, to ensure employees' compliance with sales quotas. (*Id.* ¶ 11). This procedure outlined five stages of CARs: "(1) Verbal Warning; (2) 1st Written Warning; (3) 2nd Written Warning; (4) Serious Violation; and (5) Termination." (*Id.* ¶ 12; Stockman Decl., Ex. A). The Alldata handbook from fiscal year 2018 states with respect to the CAR process that "[n]oncompliance with ALLDATA policy, poor performance or misconduct is subject to corrective action up to and including termination." (Stockman Decl., Ex. A). During Plaintiff's employment, BSMs were regularly issued CARs where they failed to meet 90% of their sales quota for a period and/or quarter. (56.1 Stmt. ¶ 13; Def. Br., Ex. 2, "Delmas Tr." at 39:24-25; Def. Br. Ex. 3a, "Spillman Tr." at 16:9-13; Stockman Exs. C, D, F; Def. Br., Ex. 21). Additionally, Defendants explain that the CAR process would reset after a BSM achieved his minimum quota expectation for three consecutive periods—meaning the BSM's next CAR after the reset would be a first stage CAR. (Spillman Tr. at 20:23-21:1; Delmas Tr. at 21:9-12).[3]

---

[3] Plaintiff purports to dispute Defendants' explanation of the CAR procedure. (56.1 Stmt. ¶¶ 13-14). However, the documents cited by Plaintiff largely confirm that during the relevant time period BSMs were subject to a minimum requirement of 90% quota. (Stockman Decl., Exs. C, D, F). Plaintiff's citation to an untitled, undated spreadsheet without any explanatory testimony is not sufficient to dispute this record

Spillman testified that at some unspecified point during his tenure, the reset policy changed from requiring three consecutive periods at 100% quota to three consecutive periods at 90% quota. (Spillman Tr. at 21:23-22:3).

Plaintiff received CARs for failing to meet the 90% minimum requirement of his sales quota on January 18, 2017, February 20, 2017, and June 5, 2017, which brought him to stage three of the CAR process. (56.1 Stmt. ¶¶ 16-18). Plaintiff met the minimum requirements for his sales quota for three consecutive periods thereafter. (*Id.* ¶ 19). Although Plaintiff disputes whether the CAR process was *automatically* reset based on these three consecutive periods of meeting quota, the evidence shows that Plaintiff's CAR process was in fact reset because his next failure to meet the minimum sales quota in May 2018 resulted in a first stage CAR (verbal warning). (*Id.* ¶¶ 19-20). Plaintiff continued to fail to meet the minimum sales quota and received a second stage CAR (first written warning) on July 9, 2018 and a third stage CAR (second written warning) on July 30, 2018. (*Id.* ¶¶ 21-22).

On August 24, 2018, Plaintiff was involved in a work-related automobile accident. (*Id.* ¶ 23; Rochelle Decl. ¶ 4). Plaintiff was out of work from the day of the accident until his doctor cleared him to return to work on September 4, 2023 ("First Medical Leave"). (56.1 Stmt. ¶¶ 24-25). Defendants provided Plaintiff quota relief for the days he was absent during the First Medical Leave—meaning that his quota for that period was adjusted commensurate with the reduced number of working days. (*Id.* ¶ 26; Def. Br., Ex. 15). Plaintiff remained on the third stage of the CAR process upon his return to work on September 4, 2023. (56.1 Stmt. ¶ 27). Plaintiff received his fourth stage CAR (serious written warning) on October 24, 2018, for failing to meet the minimum requirements of his sales quota. (*Id.* ¶ 28).

---

evidence. (*Id.*, Ex. B). Additionally, Plaintiff's own CAR history confirms that a three consecutive period reset policy applied at the relevant time (56.1 Stmt. at ¶¶ 19-20).

On November 12, 2018, Defendants granted Plaintiff's request for FMLA leave (the "Second Medical Leave") for surgery and related recovery in connection with his injuries sustained in the automobile accident. (*Id*. ¶ 30; Rochelle Decl. ¶¶ 18-20). Plaintiff states that for weeks prior to surgery, he had multiple falls because his legs were giving out, walked with a cane, experienced numbness and tingling from his hips to his feet, and experienced disturbance in his urinary and bowel functions. (Rochelle Decl. ¶¶ 15-16). He also states that prior to the November hospital admission, his ability to walk more than short distances and stand for more than short durations was impaired and that he struggled to drive, concentrate, carry conversations, perform demonstrations, and close sales. (*Id*. ¶ 17). Plaintiff underwent thoracic spine surgery on November 14, 2018 to relieve spinal cord compression. (56.1 Stmt. ¶ 54). Plaintiff provided Defendants a certification from his doctor the next week which stated that he "would be incapacitated for a single continuous period of time due to his medical condition." (*Id*. ¶ 31).

Defendants held an interactive process phone call with Plaintiff on December 12, 2018, during which two options were provided as accommodations for Plaintiff's return to work: (1) return to a position as "Inside/Telesale for 6 weeks to avoid violating the doctors order (physical restrictions)"; or (2) "6 weeks unpaid time off." (*Id*. ¶¶ 32-34). The inside sales option allowed Plaintiff to do his work over the phone and via a computer, and carried an earning potential similar to his current job in outside sales. (*Id*. ¶ 33). Plaintiff did not accept either accommodation. (*Id*. ¶ 36). Instead, on December 27, 2018, Plaintiff emailed Defendants stating that he would be returning to work "in [his] usual capacity" on January 2, 2019, and providing an authorization to return to work letter from his doctor. (*Id*. ¶¶ 39-40). The authorization letter stated that Plaintiff could return to work with the following restrictions that would last an estimated six weeks from

his return date: "no bending/lifting/twisting more than 20 lbs." and "no kneeling." (*Id.*; Rochelle Decl., Ex. E).

Plaintiff returned to work in his same position as an outside salesman on January 2, 2019. (56.1 Stmt. ¶ 41). Defendants sent Plaintiff an email two days later which summarized the CARs Plaintiff had received prior to taking medical leave and reminded Plaintiff that he was on the fourth stage of the CAR process. (*Id.* ¶ 42; Def. Br., Ex. 21). The email also stated that Plaintiff was not accountable for his sales quotas during the periods in which he was on medical leave, explained that Plaintiff was receiving an additional accommodation of quota relief in period five of fiscal year 2019 to allow him to "rebuild [his] sales pipeline", and indicated that Plaintiff was responsible for meeting the full sales quota in period six of fiscal year 2019 ("P6 FY19") and beyond. (Def. Br., Ex. 21).

Plaintiff states that after returning to work, he experienced difficulty standing and walking, felt weak and unstable, was uncomfortable driving, and experienced considerable pain. (Rochelle Decl. ¶ 35; 56.1 Stmt. ¶ 59). During P6 FY19, Plaintiff provided Defendants a doctors' note requesting that he be excused from work for re-evaluation from February 4 to 8, 2019, which was the last week of the period. (56.1 Stmt. ¶ 45). Defendants granted Plaintiff's FMLA leave ("Third Medical Leave") and gave him quota relief for the five workdays he would miss in that period. (*Id.* ¶ 46). This five-day credit adjusted Plaintiff's sales quota for P6 FY19 from $20,500 over 20 workdays to $15,375 over 15 workdays, meaning that Plaintiff was required to generate $13,857.50 to achieve 90% of his sales quota and avoid a CAR. (*Id.* ¶¶ 46, 66, 68, 115-116). However, Plaintiff generated only $12,426 in sales in the first three weeks of P6 FY19 and therefore failed to meet his minimum quota at the end of the period. (*Id.* ¶¶ 47, 69).

Plaintiff returned to work on February 11, 2019, which was the first workday of period seven of fiscal year 2019. (Rochelle Decl. ¶¶ 46-47). On February 12, 2019, Plaintiff received a fifth stage CAR for failing to meet the minimum requirements of his sales quota in P6 FY19, and was terminated. (56.1 Stmt. ¶ 48; Rochelle Decl. ¶ 48).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-3875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[4] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-5486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to

raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

"Courts have acknowledged the dangers of summary judgment in discrimination cases: 'Because direct evidence of . . . discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Benson v. Fam. Dollar Stores, Inc.*, No. 12-CV-01457, 2017 WL 11576213, at *3 (N.D.N.Y. Mar. 31, 2017) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal quotation marks omitted)), *aff'd sub nom. Benson v. Fam. Dollar Operations, Inc.*, 755 F. App'x 52 (2d Cir. 2018).

## <u>ANALYSIS</u>

### I.   <u>FMLA Claims: First and Second Claims for Relief</u>

Plaintiff's first two claims for relief proceed under the FMLA against the Corporate Defendants, Delmas, and Maguire (together, the "FMLA Defendants"). Generally, the FMLA is meant "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity" and "to entitle employees to take reasonable leave for medical reasons . . . ." 29 U.S.C. § 2601(b)(1)-(2). To this end, "the FMLA makes it illegal for employers to: (1) 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' provided under the FMLA; or (2) 'discharge or in any other manner discriminate against any individual for opposing any practice made unlawful' by the FMLA." *Prout v. Vladeck*, 316 F. Supp. 3d 784, 800 (S.D.N.Y. 2018) (quoting 29 U.S.C. § 2615(a)). Under Second Circuit precedent, there are two types of private claims for relief under the FMLA: "'interference' claims and 'retaliation' claims." *Smith*

*v. Westchester Cty.*, 769 F. Supp. 2d 448, 463 (S.D.N.Y. 2011) (quoting *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)). Plaintiff asserts both claims for relief against the FMLA Defendants. The Court considers Plaintiff's FMLA retaliation claim in conjunction with his other retaliation claims for relief *infra*.

An FMLA interference claim requires that Plaintiff plead: "(1) that he is an eligible employee under the FMLA; (2) that defendant is an employer as defined in the FMLA; (3) that he was entitled to leave under FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under the FMLA." *Id.* at 465 (citing *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 427 (S.D.N.Y. 2004)); *see also Ziccarelli v. NYU Hosps. Ctr.*, 247 F. Supp. 3d 438, 447 (S.D.N.Y. 2017). Defendants challenge only the fifth element—arguing "there is no genuine dispute that [Plaintiff] was ever denied FMLA leave or discouraged from taking FMLA leave." (Def. Br. at 28).  Plaintiff concedes that Defendants approved his requests for medical leave. (Pl. Br. at 21). Plaintiff counters, however, that the fifth element is met because Defendants "denied Plaintiff the benefit of being given job-protection, as well as the benefit of being given a 'reasonable opportunity to fulfill . . . conditions upon return to work.'" (*Id.* at 22). The Court disagrees.

The Second Circuit is clear that FMLA interference claims fail where FMLA benefits were not denied. *See i.e., Fitzgerald v. We Co.*, No. 20-CV-05260, 2022 WL 952963, at *9 (S.D.N.Y. Mar. 30, 2022) (granting summary judgment on FMLA interference claim where "[t]here is no evidence suggesting that [plaintiff's] supervisors ever discouraged or prevented her from attending therapy, or otherwise impeded her ability to exercise FMLA rights."); *see also Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, 838 F. App'd 603, 606 (2d Cir. 2020) (affirming grant of summary judgment where plaintiff was granted the full amount of time he requested as "sick leave"

and no reasonable fact finder could conclude that plaintiff was denied a benefit to which he was entitled). Plaintiff does not cite, nor has this Court found, any Second Circuit precedent stating otherwise.[5] Given that it is undisputed that Plaintiff received all the medical leave time he requested and that there is no evidence Plaintiff was ever discouraged from taking leave, Defendants' motion for summary judgment on the FMLA interference claim is granted.

II.   Disability Discrimination Claims: Third (ADA), Sixth (NYSHRL), Eighth (NYCHRL) Claims for Relief

Plaintiff's third, sixth, and eighth claims for relief assert claims of discrimination on the basis of disability in connection with his termination, in violation of the ADA (against Corporate Defendants), NYSHRL (against all Defendants), and NYCHRL (against all Defendants). (S*ee generally* FAC; Pl. Br. at 22).

The ADA prohibits covered entities from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). Claims of discrimination under the ADA, NYSHRL[6], and NYCHRL are analyzed at the summary judgment stage under the burden-shifting framework announced by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-03718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022);

---

[5] Plaintiff relies on *Martin v. Brevard County Public Schools* for the proposition that Defendants' approval of Plaintiff's requests for medical leave does not vitiate his FMLA interference claim. 543 F. 3d 1261, 1267 (11th Cir. 2008); (Pl. Br. at 21-22). However, *Martin* is inapplicable here. There, the Eleventh Circuit found an issue of fact as to whether an employer interfered with an employee's right to reinstatement where the employee's contract was not renewed because of his inability to complete an improvement plan while on FMLA leave. *Martin*, 543 F. 3d at 1267. Here, Plaintiff returned to work in his same position and was granted quota relief for the workdays he had missed. He was ultimately terminated because of his deficient sales performance during the three weeks of the period that he was present at work, not because of any performance issues during the time he was on leave.

[6] Several amendments to the NYSHRL, "the effect of which is to render the standard for claims closer to the standard of the [New York City Human Rights Law] . . . . only apply to claims that accrue on or after the effective date of October 11, 2019; they do not apply retroactively to Plaintiff's claims here." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 233 (S.D.N.Y. 2021).

*Sohnen v. Charter Commc'ns, Inc.*, No. 18-CV-6744, 2022 WL 900602, at *8 (E.D.N.Y. Mar. 28, 2022) ("A claim for discrimination based on disability under the ADA, NYSHRL, and NYCHRL is subject to the burden shifting analysis in *McDonnel Douglas*."). Phase one of the *McDonnell Douglas* test places upon the plaintiff the burden of establishing a *prima facie* case of discrimination by alleging that: (1) "his employer is subject to the ADA;" (2) "he is disabled within the meaning of the ADA or perceived to be so by his employer;" (3) "he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation;" and (4) "he suffered an adverse employment action because of his disability." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008). "In assessing causation under the fourth step, courts in the Second Circuit consider whether discrimination was the but-for cause of the adverse action." *Turner v. Delta Airlines, Inc.*, No. 19-CV-2580, 2023 WL 2305935, at *5 (E.D.N.Y. Mar. 1, 2023) (citing *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019)). The elements of *prima facie* claims of discrimination under the NYSHRL and NYCHRL are generally the same as those under the ADA. *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010).[7]

If the plaintiff sets forth a *prima facie* case of discrimination, "the burden of production then shifts to the defendant to offer a legitimate, non-discriminatory rationale for the adverse employment action." *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 397 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 739 (2d Cir. 2014) (quoting *McDonnell Douglas*, 411 U.S. at 802-03). "If the defendant articulates a legitimate reason for the action, the presumption of discrimination raised by the *prima facie* case drops out, and the plaintiff has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision and that

---

[7] However, Plaintiff's burden to establish causation under the NYCHRL requires a showing that disability discrimination played a role in Defendants' termination decision, not that it was a "but-for" cause. *See Hamburg v. N.Y. Univ. Sch. of Med.*, No. 153572/2012, 2016 WL 3350879, at *9 (N.Y. Sup. Ct. June 16, 2016).

the plaintiff's membership in a protected class was." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

Defendants argue that Plaintiff fails to make out a *prima facie* claim of discrimination because at the time of his termination he was not qualified for the job or disabled, and there is no evidence that his purported disability was a "but-for" cause of his termination. (Def. Br. at 19-21). Defendants further argue that, in any event, they have a legitimate, non-discriminatory reason for terminating Plaintiff—"his persistent failure to meet the minimum requirements of his sales quota"—and Plaintiff failed to show evidence that this reason was merely a pretext for disability discrimination. (*Id.* at 21-22). The arguments advanced by Defendants are analyzed *seriatim*.

### A. Phase One: *Prima Facie* Case

Defendants' three arguments directed to Plaintiff's *prima facie* case of discrimination concern the second, third, and fourth elements: that Plaintiff was disabled, qualified for the position, and that he suffered an adverse employment action because of his disability. The Court considers each in turn.

#### i. *Disability*

The ADA Amendment Act of 2008 ("ADAAA"), effective January 1, 2009, defines "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff proceeds under each of those theories: "actual disability," "regarded as" having a disability, and "record of such impairment."

With respect to Plaintiff's theory of actual disability, "[f]or purposes of determining whether an ADA plaintiff is a 'qualified individual with a disability,' 42 U.S.C. § 12131(2), the ADA defines 'disability' to include, *inter alia*, 'a physical or mental impairment that substantially

limits one or more major life activities.'" *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020)). "[M]ajor life activities include, but are not limited to, 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Graham v. Three Vill. Cent. Sch. Dist.*, No. 11-CV-05182, 2013 WL 5445736, at *11 (E.D.N.Y. Sept. 30, 2013) (Bianco, J.) (quoting 42 U.S.C. § 12102(2)). "A short-term injury can qualify as an actional disability under the ADA." *Mrani v. New York State Dep't of Corr. & Cmty. Supervision*, No. 21-CV-01072, 2022 WL 889286, at *5 (S.D.N.Y. Mar. 24, 2022) (citing *Hamilton*, 3 F.4th at 86). Plaintiff's claimed impairment is his spinal condition which occurred as a result of the automobile accident in August 2018. (56.1 Stmt. ¶ 23). Plaintiff argues that his injury qualifies as a disability because, prior to surgery, it left him "temporarily unable to walk, stand, or move from the waist down," and although the injury improved, he "continued to suffer weakness and considerable pain." (Pl. Br. at 23). Defendants dispute that Plaintiff suffered from a disability because "any limitation stemming from his automobile accident or surgery was short-lived and not substantial." (Def. Br. at 20). In light of Plaintiff's concession that his medical condition improved over time (Pl. Br. at 17), the Court evaluates Plaintiff's medical condition in the periods both before and after his January 2, 2019 return to work.

Plaintiff went out on his Second Medical Leave for surgery and related recovery in November 2018. (56.1 Stmt. ¶ 30). Plaintiff states that while he was hospitalized but prior to undergoing surgery, he could not walk, stand, or move from the waist down. (Rochelle Decl. ¶ 21). The medical evidence of Plaintiff's alleged disability found in this record is contained in the Declaration of Joseph Lee ("Dr. Lee"). (*See generally* Lee Decl.). Dr. Lee diagnosed Plaintiff with

"T10-T11 severe spinal stenosis with cord compression and T11-T12 left-sided stenosis" and performed urgent thoracic spine surgery on Plaintiff on November 14, 2018. (Lee Decl. ¶¶ 3-6). Dr. Lee's examination of Plaintiff two weeks post-surgery indicates that Plaintiff walked with a cane which "he use[d] for minimal assistance," had a "lift restriction of 5-10 pounds with no excessive bending, lifting, and twisting and no driving," and was out of work. (*Id.*, Ex. B at 11-12). Therefore, the medical evidence confirms that Plaintiff was significantly impaired in his ability to lift, stand, walk, and drive during this period such that his spinal condition constituted an actual disability.

Dr. Lee's records immediately preceding Plaintiff's return to work indicate that Plaintiff recovered well from surgery. On December 26, 2018, Dr. Lee noted that Plaintiff was "doing well" and "ha[d] no significant neurologic symptoms in his legs." (*Id.*, Ex. B at 7). Dr. Lee cleared Plaintiff to return to work on January 2, 2019 with only temporary restrictions on his bending, lifting, twisting, and kneeling, and no restriction on his walking, standing, or driving. (Rochelle Decl., Ex. E; Lee Decl., Ex. B at 7).

Plaintiff states, however, that even after his return to work on January 2nd, his injury continued to impair major life activities such as walking, driving, standing, and lifting. (Rochelle Decl. ¶¶ 21, 35). The medical evidence does not support this. Plaintiff reported to Dr. Lee in his February 8, 2019 examination "that after he started working, he had increasing left leg pain and weakness . . . [and] fe[lt] like his knee [wa]s unstable." (Lee Decl., Ex. B at 5). Notably, the records do not show that Plaintiff reported any limitation on his major life activities such as walking, standing, driving, or lifting. (*Id*). Additionally, after the February 8, 2019 examination, Dr. Lee determined that Plaintiff could return to work without extension of his existing work restrictions (which were set to expire the next week) and without any restriction on his ability to stand, walk,

or drive. (*Id*). Thus, the medical evidence does not support Plaintiff's statements about his condition after returning to work. Plaintiff's statements alone are insufficient to establish that he was disabled within the meaning of ADA after returning to work. *See Dipinto v. Westchester Cnty.*, No. 18-CV-00793, 2023 WL 1438721, at *6 (S.D.N.Y. Feb. 1, 2023) (finding Plaintiff's testimony insufficient to establish an ADA-qualifying disability where the "medical evidence does not detail Plaintiff's required accommodations or limitations, except to recite Plaintiff's self-reported limitations as of that date"); s*ee also Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 392 (S.D.N.Y. 1998) ("plaintiff's testimony as to the alleged limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his *prima facie* case under the ADA").

"Indeed, 'courts have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities.'" *Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 164 (S.D.N.Y. 2020), *aff'd*, 2021 WL 5986999 (2d Cir. Dec. 17, 2021) (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998). Here, the medical evidence shows that Plaintiff's medical condition substantially improved after surgery although he may have had some lasting pain and/or weakness in his leg. This evidence is insufficient to establish that Plaintiff was substantially limited in his major life activities after returning to work. *See Cady v. Bolivar-Richburg Cent. Sch. Dist.*, No. 12-CV-01121, 2016 WL 8291111, at *7 (W.D.N.Y. Nov. 28, 2016) (holding, on motion for summary judgment, that the plaintiff failed to provide sufficient evidence that her lumbar disc herniation, which caused a "moderate limitation in her ability to walk," was a disability for purposes of the ADA), *adopted by* 2017 WL 713715 (W.D.N.Y. Feb. 21, 2017); *Graham*, 2013 WL 5445736, at *18 ("The fact that an individual has a visible limp or type of walking impairment does not *per se* establish an ADA-qualifying disability.").

Accordingly, Plaintiff's spinal condition after his January 2019 return to work does not constitute a disability under the ADA.

Given that Plaintiff's discrimination claims necessarily implicate the entire time period between his automobile accident and termination and that Plaintiff suffered a disability for at least some of the relevant time period, the Court finds that Plaintiff has met the second element for a *prima facie* claim of discrimination under the ADA, NYSHRL, NYCHRL.[8, 9]

### ii.   *Qualified to Perform*

Defendants argue with respect to the third element that Plaintiff was not qualified to perform the essential functions of the job based on his failure to meet his minimum sales quota, including failures that "pre-dated any purported disability." (Def. Br. at 20-21). However, "[t]he qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001)); *see also Beaton v. Metro. Transportation Auth. New York City Transit*, No. 15-CV-08056, 2016 WL 3387301, at *6 (S.D.N.Y. June 15, 2016) ("ADA discrimination claims 'require[ ] only a minimal showing of qualification to establish a *prima facie* claim,' and a plaintiff 'only needs to demonstrate that she possesses the basic skills necessary for performance of [the] job"). It is undisputed that an essential function of Plaintiff's job was to meet his sales quotas. (56.1 Stmt. ¶ 6; Pl. Br. at 26; Def. Br. at 19). Plaintiff was employed by Autozone for approximately three and a half years and, despite having missed his minimum quota several times toward the end of his

---

[8]On these facts, the Court further finds that Plaintiff has made a sufficient showing of disability under the NYSHRL and NYCHRL, given that "[a] qualifying disability is defined more broadly under the NYSHRL and the NYCHRL than it is under . . . the ADA." *Karupaiyan v. CVS Health Corp.*, No. 19-CV-8814, 2021 WL 4341132, at *17 (S.D.N.Y. Sept. 23, 2021).

[9] The Court, having found sufficient evidence of actual disability to establish a *prima facie* case of discrimination, need not consider Plaintiff's theories of "regarded as" and "record of" disability.

employment, achieved his minimum quota in several other sales periods. Accordingly, the Court finds that Plaintiff was qualified for the position as Business Solutions Manager and therefore meets the third element of the *prima facie* claim of discrimination. *See e.g., Davis v. Power of Auth.*, No. 19-CV-00792, 2022 WL 309200, at *10 (S.D.N.Y. Feb. 2, 2022), *aff'd*, 2023 WL 3064705 (2d Cir. Apr. 25, 2023) (finding plaintiff possessed the basic skills necessary for performance of the job despite having "performance issues").

### iii.   Causation

Defendants also challenge the fourth element—that Plaintiff suffered an adverse employment action because of his disability. (Def. Br. at 20-21).

Evidence which may permit an inference of discrimination includes: "[(1)] remarks or actions made by decisionmakers that could be viewed as reflecting a discriminatory animus[,] . . . [(2)] preferential treatment given to employees outside the protected class[,] [or (3)] the timing or sequence of events leading to the plaintiff's termination." *Rosario v. Hilton Worldwide, Inc.*, No. 09-CV-05336, 2011 WL 336394, at *3 (E.D.N.Y. Jan. 24, 2011), *aff'd sub nom.*, 476 F. App'x 900 (2d Cir. 2012) (summary order).

Plaintiff first contends that a reasonable jury could infer disability discrimination from the fact that Plaintiff's taking the Third Medical Leave "prevented him from achieving P6 minimum quota." (Pl. Br. at 26). As a threshold matter, even with being on leave for the last week of a period, Plaintiff *could have* achieved his adjusted P6 FY19 minimum quota had he generated the requisite number of sales in the first three weeks of that period. In any event, the Court does not agree that this situation supports an inference of discrimination. Plaintiff was warned upon returning to work from his Second Medical Leave that he would be held responsible for meeting his minimum quota in P6 FY19. (Def. Br., Ex. 21). Defendants additionally granted Plaintiff quota relief for period

five of fiscal year 2019 so that he could use the time to "rebuild [his] sales pipeline." (*Id*.). Plaintiff knew from these communications as well as his prior experience that in the event he missed workdays, he would be accommodated in the form of commensurate quota relief. Therefore, Plaintiff was aware at all times during P6 FY19 of what was expected of his performance. That he was terminated based on his performance in a period during which he took a medical leave does not create an inference of discrimination.

Plaintiff also contends that disability discrimination could be inferred from the more favorable treatment of Ed Ganem ("Ganem"), Bhumendra Roy Jadubans ("Jadubans"), and Charles Hague ("Hague"). (Pl. Br. at 26). "A showing of disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 20-21 (2d Cir. 2013) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010)). "The 'standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' such that 'the comparator must be similarly situated to the plaintiff in all material respects.'" *Abdul-Hakeem*, 523 F. App'x at 21 (quoting *Ruiz*, 609 F.3d at 494); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("[T]he plaintiff must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Johnson v. L'Oreal USA*, No. 21-2914-CV, 2023 WL 2637456, at *4 (2d Cir. Mar. 27, 2023) (quoting *Ruiz*, 609 F.3d at 493-94); *see also Graham*, 230 F.3d at 40.

Plaintiff argues that both Jadubans and Ganem, BSMs outside of the protected class, received more favorable treatment than him because they were issued five CARs but were not terminated. (Pl. Br. at 16-18). However, discipline under the CAR process is based on the CAR stage reached by an employee rather than the total number of CARs received by an employee. The material questions, therefore, are what disciplinary stage these purported comparators reached and, if they reached the fifth stage CAR (which Defendants believed warranted termination), how they were treated as compared to Plaintiff. The record is clear that neither Jadubans nor Ganem ever received a fifth stage CAR. (Stockman Dec., Exs. E, H).

Jadubans received a first stage CAR on April 12, 2018, a second stage CAR on June 5, 2018, a third stage CAR on July 13, 2018, a first stage CAR on October 23, 2018, and a second stage CAR on November 21, 2018. (Stockman Dec., Ex. H). This disciplinary history is consistent with Defendants' policy, described *supra*, wherein three consecutive periods of meeting one's minimum sales quota resets the CAR process. Accordingly, Plaintiff is not similarly situated to Jaduban because Jaduban never reached the fifth stage CAR.

The Court finds that Plaintiff is not similarly situated to Ganem for the same reason. Ganem received a first stage CAR on April 11, 2018, a first stage CAR on August 27, 2018, a second stage CAR on October 23, 2018, a third stage CAR on November 21, 2018, and a fourth stage CAR on December 17, 2018. (Stockman Dec., Ex. E). Plaintiff concedes that Ganem never received a fifth stage CAR but argues that he should have. (Pl. Br. at 18). Plaintiff argues that it can be "deduced" from Ganem's record of CARs between March 11, 2018 and February 12, 2019 that Ganem should have received an additional CAR between period eight and period thirteen of fiscal year 2018. (Pl. Br. at 19). Defendants respond that Plaintiff's "efforts to reverse engineer" Ganem's CARs are speculative and disregard testimony that the CAR process reset for Ganem. (Reply at 8).

However, mere speculation is insufficient to create an issue of fact on summary judgment. *See Capobianco v. Stop & Shop Supermarket Co. LLC*, No. 14-CV-06112, 2017 WL 1157173, at *2 (S.D.N.Y. Mar. 24, 2017) ("The nonmoving party may not rely on conclusory allegations or unsubstantiated speculation."). Here, Plaintiff's calculation is based on a CAR report with no testimony to provide context or other supporting documents. Additionally, Plaintiff's conclusion drawn from that calculation does not account for the CAR reset policy. Even taking this fact as true that Ganem should have received an additional CAR but did not, these individuals are still not similarly situated. The Court cannot speculate as to how Defendants would have treated Ganem had he reached the fifth stage of the CAR process to ascertain whether he was treated differently.

Plaintiff also implicates Ganem's performance in fiscal year 2020 as a basis for comparison. (Pl. Br. at 19-20). However, Defendants shifted from the CAR process to a different disciplinary procedure, the PIP process, in fiscal year 2020. (Spillman Tr. at 68:1-17). Thus, Plaintiff in fiscal year 2018 was not similarly situated to Ganem in fiscal year 2020 because they were subject to different disciplinary standards.

With respect to Hague, another BSM outside of the protected class, Plaintiff fails to show that he was treated more favorably. Hague reached the fifth stage of the CAR process for continued failure to meet the minimum requirements of his sales quota and was terminated on July 3, 2018. (56.1 Stmt. ¶ 51-52; Stockman Decl., Ex. F). Plaintiff argues that because there was a four-period gap between Hague's stage four CAR and his termination, it must be that either "(a) Mr. Hague achieved less than 90% to plan . . . without receiving a CAR or (b) Mr. Spillman did not reset the CAR process even though Mr. Hague went 4 consecutive periods without receiving a CAR . . ." (Pl. pdf page at 17-18). However, Spillman explained at deposition that the CAR process did not reset for Hague after three periods of achieving the minimum of 90% of his sales quota because,

at the time, three consecutive periods of 100% were required to reset the process. (Spillman Tr. at 21:23-22:3). Plaintiff offers no evidence to dispute this explanation. Regardless, Plaintiff's arguments do not impact the primary question – whether Hague reached the same stage of the CAR process as Plaintiff and was treated differently. The record evidence shows that Hague was not treated more favorably than Plaintiff because, like Plaintiff, Hague was terminated after reaching the fifth stage CAR.

Accordingly, Plaintiff's disparate treatment claims with respect to all three proposed comparators are unsupported by the record and fail as a matter of law. Plaintiff provides no other basis for an inference of discrimination. Based on this record, Plaintiff failed to prove that he was terminated because of his disability rather than because of his repeated failure to meet sales quota that resulted him receiving a fifth stage CAR. *See e.g., Turner*, 2023 WL 2305935 at *6 (finding plaintiff failed to raise an inference of discrimination where she could not "prove she was terminated because of her disability rather than because of her repeated policy infractions.").

### B.   Phases Two and Three: Legitimate, Non-Discriminatory Reason and Pretext

Even assuming Plaintiff was able to establish a *prima face* case, his discrimination claims fail because Defendants provide a legitimate, non-discriminatory explanation for his termination.

At phase two, "the burden of production [ ] shifts to the defendant to offer a legitimate, non-discriminatory rationale for the adverse employment action." *Wesley-Dickson*, 973 F. Supp. 2d at 397 (quoting *McDonnell Douglas*, 411 U.S. at 802-03). Here, Plaintiff's termination constitutes an adverse employment action. *See Witek v. City of New York*, 807 F. App'x 52, 54 (2d Cir. 2020) ("[T]ermination certainly constitute[s an] adverse employment action[ ]"). Based on the evidence in the record, no reasonable jury could find that Defendants failed to satisfy their burden

of establishing that there was a legitimate non-discriminatory reason for the adverse employment action.

It is undisputed that Plaintiff reached the fifth stage CAR for his repeated failure to meet his minimum sales quota and without three consecutive periods of meeting quota sufficient to reset the CAR process. Accordingly, Plaintiff's performance deficiencies constitute a legitimate, non-discriminatory reason for Defendants' decision to terminate him. *See Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 250 (2d Cir. 2005) (stating that failure to "perform satisfactorily" is a legitimate, nondiscriminatory reason for dismissal).

Phase three of the *McDonnell Douglas* burden shifting analysis requires Plaintiff "to demonstrate that the proffered reason was not the true reason for the employment decision and that the plaintiff's membership in a protected class was." *Wesley-Dickson*, 973 F. Supp. 2d at 397. This requires Plaintiff to "come forward with 'sufficient evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the [defendants] were false, and that more likely than not [discrimination] was the real reason for the [employment action].'" *Hartley v. Rubio*, 785 F. Supp. 2d 165, 180 (S.D.N.Y. 2011) (quoting W*einstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)); *see also Rajcoomar v. TJX Cos., Inc.*, 319 F. Supp. 2d 430, 438 (S.D.N.Y. 2004) ("The Supreme Court has articulated that 'a reason cannot be proved to be a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.'" (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993))).

Plaintiff argues that Defendants' reason for terminating him is pretextual based on the same arguments Plaintiff advances to show that there was an inference of discrimination. (Pl. Br. at 28). As discussed *supra*, those arguments are insufficient because the record evidence does not show that Plaintiff was similarly situated to Jaduban or Ganem, nor that he was treated differently than

Hague. Additionally, Plaintiff's termination for failure to achieve quota in a period during which he took medical leave does not establish pretext. Accordingly, Plaintiff's arguments are insufficient to overcome Defendants' legitimate, non-discriminatory reason for Plaintiff's termination. Plaintiff therefore fails to meet his burden under the third step of the *McDonnell Douglas* framework.

Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's third, sixth, and eighth discrimination claims for relief is granted.

III.   Retaliation Claims: First (FMLA), Fourth (ADA) and Eleventh (NYLL § 215) Claims for Relief

Plaintiff's first, fourth, and eleventh claims for relief allege retaliation in violation of the FMLA (against FMLA Defendants), the ADA (against Corporate Defendants), and NYLL (against all Defendants).

A.   ADA

To make out a *prima facie* case of retaliation under the ADA, "a plaintiff must demonstrate that (1) [he] engaged in protected activity, (2) the defendant was aware of that activity, (3) [he] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. New York City Transit Auth.*, --- F.4th ---, 2023 WL 5005655, at *5 (2d Cir. Aug. 7, 2023); *see also Ninying v. New York City Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020).

A plaintiff must show "that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). "This but-for reason need not be the only cause for the employer's action; however, the plaintiff must show that the adverse action would not have

occurred in the absence of the retaliatory motive." *Id*. at 846; *D'Andrea v. Nielsen*, 765 F. App'x 602, 605 (2d Cir. 2019). Even under this but-for standard, causation can be proven either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y. City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000); *see also Zann Kwan*, 737 F.3d at 845 ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the *prima facie* stage on summary judgment or at trial indirectly through temporal proximity."). Once a plaintiff has established a *prima facie* showing of retaliation, the burden then shifts to the defendant to proffer a legitimate, non-retaliatory reason for the adverse employment action. *Zann Kwan*, 737 F.3d at 845. The plaintiff must then demonstrate that the non-retaliatory reason is a mere pretext for retaliation. *Id*.

Plaintiff alleges that Defendants retaliated against him in violation of the ADA by terminating him after he requested accommodations—namely—FMLA leave and that Spillman conduct "ride-alongs" with him. [10] (Pl. Br. at 29). Plaintiff's taking of FMLA leave constitutes an ADA protected activity and Plaintiff's termination constitutes an adverse action. Defendants, however, argue that Plaintiff fails to establish a causal link between the two. (Def. Br. at 24).

Plaintiff does not offer any direct evidence of discriminatory animus but attempts to prove causation based on temporal proximity and circumstantial evidence showing disparate treatment.

---

[10] The Court does not consider Plaintiff's requests for Spillman to conduct "ride-alongs" with him to be a request for an accommodation for his purported disability. Plaintiff states that his medical condition negatively impacted his ability to make sales in that it "made customers feel uncomfortable and diverted their focus away from [his] sales efforts. . . " and because "customers had asked [him] to leave due to concern [he] could fall and sue them." (Rochelle Decl. ¶ 36). Plaintiff does not provide any explanation as to how Mr. Spillman's presence at his sales calls would impact these customers' concerns about Plaintiff's medical condition.

(Pl. Br. at 27-28). As discussed *supra*, the Court finds that the record evidence does not support Plaintiff's claims of disparate treatment with respect to Hague, Jadubans, or Ganem. Plaintiff therefore relies solely on temporal proximity to establish a causal connection given that he was terminated on the first workday after he returned from his Third Medical Leave. (Pl. Br. at 27-28); *see Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (citing *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir.2001)) ("[A] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action."). However, "temporal proximity alone is insufficient to establish a retaliatory motive where other evidence erodes the causal connection between the protected activity and the adverse employment action." *Smith v. Barnhart*, No. 06-CV-01796, 2009 WL 922018, at *9 (E.D.N.Y. Mar. 23, 2009). Here, Plaintiff received multiple CARs for failure to meet his sales quota prior to him engaging in any ADA protected activity. (Def. Br., Ex. 21). Indeed, he was at the third stage of the CAR process before the accident. (56.1 Stmt. ¶ 27). Thus, Plaintiff's disciplinary history from before the protected activity cuts against an inference of retaliation. *See Slattery*, 248 F.3d at 95 (2d Cir. 2001) ("[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise"); *see also, Woolf v. Bloomberg L.P.*, No. 16-CV-06953, 2019 WL 1046656, at *14 (S.D.N.Y. Mar. 5, 2019), *aff'd sub nom.*, 949 F.3d 89 (2d Cir. 2020) (concluding no reasonable trier of fact could infer a causal connection between the protected activity and termination where the "parties have submitted an extensive record of negative reviews and feedback that predate and postdate the EEOC filing"). Even assuming that Plaintiff can establish that temporal proximity alone creates an inference of retaliation, the claim still cannot survive

summary judgment because, as discussed *supra*, Plaintiff has no evidence from which a rational jury could find Defendants' legitimate, nondiscriminatory reason for his termination to be a pretext for retaliation.

      B.  <u>FMLA</u>

Plaintiff likewise claims that the FMLA Defendants terminated him in retaliation for his taking FMLA leave. (Pl. Br. at 13).

An FMLA retaliation claim has the same *prima facie* elements as an ADA retaliation claim. *See Nikolakopoulos v. Macy's Inc.*, No. 20-CV-01641, 2022 WL 3903595, at *15 (S.D.N.Y. Aug. 30, 2022). As discussed *supra*, the Court found that Plaintiff's sole reliance on temporal proximity is insufficient to establish an inference of retaliation due to his disciplinary history from before the protected activity.[11] In any event, Defendant has established a legitimate, non-retaliatory reason for Plaintiff's termination and Plaintiff fails to offer sufficient evidence of pretext. *See i.e. Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254-55 (2d Cir. 2014) (stating that "temporal proximity alone is not enough to establish pretext in this Circuit" and affirming entry of summary judgment for defendants where plaintiff "alleged nothing beyond temporal proximity to establish pretext").

Plaintiff additionally fails to prove that his taking FMLA leave played a negative role in Defendants' termination decision. (Pl. Br. at 20-21). Plaintiff does not point to any document or

---

[11] Plaintiff additionally argues with respect to his FMLA retaliation claim that a causal connection is established because he (i) was terminated based on performance in a period during which he took FMLA leave and (ii) did not have "reasonable opportunity" to reach the adjusted quota after his return from leave. (Pl. Br. at 14-15). Plaintiff cites no Second Circuit cases to support this argument. Indeed, even the Seventh Circuit case Plaintiff relies on states that "[t]he FMLA *does not require* an employer to adjust its performance standards for the time an employee is actually on the job, but it can require that performance standards be adjusted to avoid penalizing an employee for being absent during FMLA-protected leave." *Pagel v. TIN Inc.*, 695 F.3d 622, 629 (7th Cir. 2012) (emphasis added). Plaintiff fails to explain how a sales quota reduced commensurate with the workdays he was absent "penalized" him for being on leave. Accordingly, the Court does not find the circumstances surrounding Plaintiff's quota relief to be an independent basis for an inference of retaliation.

testimony suggesting that his need for FMLA leave was a negative factor in Defendant's decision to terminate him. Rather, Plaintiff confirms that he was granted FMLA leave on each occasion he requested it and was consistently granted accommodations in the form of quota relief. *See Fitzgerald*, 2022 WL 952963 at *10 (granting motion for summary judgment as to FMLA retaliation claim where plaintiff "points to 'no document or testimony suggesting that . . . any [WeWork] decision-maker considered her alleged need for FMLA leave as a negative factor in [their] decision to terminate [her]").

C.   New York Labor Law

Plaintiff's eleventh claim for relief asserts retaliation in violation of NYLL § 215. The NYLL makes it unlawful to retaliate against an employee because he engaged in protected activity. N.Y. Lab. Law § 215(1)(a) (unlawful for employer to "discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates [the NYLL]"). A *prima facie* case of retaliation under the NYLL requires Plaintiff to show "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Watkins v. First Student, Inc.*, No. 17-CV-01519, 2018 WL 1135480, at *9 (S.D.N.Y. Feb. 28, 2018).   NYLL retaliation claims are also subject to the burden-shifting framework in *McDonnell Douglas*. *See Cortese v. Skanska Koch, Inc.*, 544 F. Supp. 3d 456, 470 (S.D.N.Y. 2021).

Here, Plaintiff argues that Defendants retaliated against him for the protected activity of "complaining about ALLDATA's failure to pay him earned PTO." (Pl. Br. at 30-31).   However, as discussed *supra*, even if Plaintiff has made out a sufficient *prima facie* case of retaliation based

28

on the temporal proximity between his request to be paid earned PTO and termination, Plaintiff

has offered no evidence to show that the stated reason for his termination was pretextual. He does

not provide any evidence that his complaints about PTO were considered by Defendants in the

decision to terminate him. It is undisputed that Plaintiff failed to meet his sales quota on a number

of occasions which led him to the fifth stage of the CAR process. Thus, Plaintiff offers no evidence

or plausible argument as to why his termination would have been based on his complaints about

failure to be paid earned PTO rather than on his poor performance. *See i.e. Cortese*, 544 F. Supp.

3d at 473 (granting summary judgment as to NYLL retaliation claim where "[plaintiff] offers no

plausible argument for why hiring a hoist operator instead of a crane operator was pretextual.").

Under these circumstances, the Defendants are entitled to judgment dismissing Plaintiff's

first, fourth, and eleventh retaliation claims for relief.

IV. Failure to Accommodate and Engage in Cooperative Dialogue Claims: Fifth (ADA),
Seventh (NYSHRL), Ninth (NYCHRL); Tenth (NYCHRL)

A. Failure to Accommodate

Plaintiff's fifth, seventh, and ninth claims for relief claim that Defendants failed to provide

him a reasonable accommodation for his disability in violation of the ADA (against Corporate

Defendants), the NYSHRL (against all Defendants), and the NYCHRL (against all Defendants).

(*See generally* FAC).

To state a failure to accommodate claim under the ADA, NYSHRL, and NYCHRL,

Plaintiff must plead that: "(1) [he] is a person with a disability under the meaning of [the ADA];

(2) an employer covered by the statute had notice of [his] disability; (3) with reasonable

accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer

has refused to make such accommodations." *Natofsky*, 921 F.3d at 352 (quoting *McBride v. BIC

Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)); *see, e.g., Lawtone-Bowles v. City of*

*N.Y.*, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019) ("Courts apply the same standard for failure to accommodate cases under the ADA, . . . NYSHRL, and NYCHRL.")

As a threshold matter, Plaintiff limits his failure to accommodate claims to his Third Medical Leave, namely—P6 FY19. (Pl. Br. at 28-29). Plaintiff asserts that Defendants failed to accommodate him by adjusting his P6 FY19 quota to a sales number he did not generate, and thereby "guaranteeing his failure," rather than affording him additional days to meet his quota. (Pl. Br. at 28). Plaintiff also argues that Defendants failed to reasonably accommodate him based on Spillman's refusal to perform a "ride-along" with Plaintiff in P6 FY19. (Pl. Br. at 29). As noted *supra*, the Court does not consider the request for a "ride-along" to be an accommodation for Plaintiff's disability.

The Court has already found that the record does not support Plaintiff as having an ADA-qualifying disability during his Third Medical Leave. Plaintiff's failure to accommodate claim under the ADA can be dismissed solely based on his failure to prove that he was disabled at the time he requested an accommodation.[12]

Assuming *arguendo* that Plaintiff made a factual showing sufficient to establish that he was disabled during P6 FY19, the motion would still be granted because the evidence shows–as Defendants argue (Reply at 12)–that Defendants provided a reasonable accommodation in the form of a five-day credit toward Plaintiff's sales quota for that period. (56.1 Stmt. ¶ 46). Defendants had previously provided Plaintiff quota relief to accommodate his medical leave and had even given him quota relief in his first period back to work from the Second Medical Leave. Plaintiff had no

---

[12] Unlike claims for discrimination, retaliation, or hostile work environment—claims of relief focused on an employer's intent or perception, which may proceed without a plaintiff showing that he is, in fact, disabled under the statute—a failure to accommodate claim can proceed only on a showing that Plaintiff is so disabled. *Shomo v. Dep't of Corrs. & Cmty. Supervision*, No. 15-CV-1029, 2019 WL 7971871, at *12 (N.D.N.Y. Oct. 7, 2019) (observing that even if Plaintiff was "regarded as" disabled, he was not actually entitled to a reasonable accommodation), *adopted by* 2020 WL 486868 (N.D.N.Y. Jan. 30, 2020).

reason to expect a different accommodation. Further, to the extent Plaintiff was entitled to an accommodation, he was not entitled to his preferred accommodation, only a reasonable one. *See Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 95 (2d Cir. 2015) (ADA does not require provision of "a perfect accommodation or the very accommodation most strongly preferred"). That Plaintiff would have preferred extra time rather than a reduced quota does not mean the quota relief provided was unreasonable.

Additionally, the interactive process is a two-way street and "[a]n employee who is responsible for the breakdown of the interactive process may not recover for a failure to accommodate." *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 794 (S.D.N.Y. 2020) (quoting *Nugent v. St. Lukes Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 945-46 (2d Cir. 2008) (alteration in original)). After rejecting Defendants' accommodation offers of working inside sales or taking further time off, Plaintiff provided Defendants a doctor's note and stated that he would be returning to work in his "usual capacity." (56.1 Stmt. ¶¶ 39-40). Defendants responded by informing Plaintiff of his CAR history and their upcoming performance expectations, and the conversation closed. (Def. Br., Ex. 21). On these facts, to the extent the interactive process was triggered by his Second Medical Leave, Plaintiff ended it by returning to work with doctor's authorization. He cannot now state a claim for failing to be reasonably accommodated. *See Economou v. Caldera*, No. 99-CV-12117, 2000 WL 1844773, at *24 (S.D.N.Y. Dec. 18, 2000) (granting the defendant's motion for summary judgment because the plaintiff "was responsible for a breakdown in the interactive process"); *see also Durick v. New York City Dep't of Educ.*, 202 F. Supp. 3d 277, 290 (E.D.N.Y. 2016) ("Plaintiff cannot unreasonably discontinue a process through which she could have been accommodated and then use the abandoned request as the basis for a failure to accommodate claim.").

Ultimately, the record shows substantial efforts by Defendants to provide Plaintiff with reasonable accommodations starting from the First Medical Leave. Additionally, Plaintiff ended the interactive process when he returned to work and cannot now complain about Defendants' failure to engage in that process. Defendants' motion for summary judgment on the failure to accommodate claims for relief is therefore granted.

B. Failure to Engage in Cooperative Dialogue

Plaintiff's tenth claim for relief asserts that Defendant failed to engage in a cooperative dialogue with respect to his accommodation for the Third Medical Leave.

"The failure to engage in a cooperative dialogue is independently actionable under the NYCHRL." *Goldman v. Sol Goldman Invs. LLC*, No. 20-CV-06727, 2022 WL 6564021, at *5 (S.D.N.Y. Aug. 5, 2022), *adopted by* 2022 WL 4482296 (S.D.N.Y. Sept. 27, 2022). Pursuant to the NYCHRL, "[i]t shall be an unlawful discriminatory practice for an employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time." *Heiden v. New York City Health & Hosps. Corp.*, No. 20-CV-10288, 2023 WL 171888, at *33 (S.D.N.Y. Jan. 11, 2023) (citing N.Y.C. Admin. Code § 8-107(28)(a)(2)). Plaintiff's argument that Defendants refused to participate in the requisite cooperative dialogue regarding accommodations for his spinal condition is unavailing.

The undisputed evidence shows that Defendants engaged in a dialogue with Plaintiff leading up to his return from the Second Medical Leave. (56.1 Stmt. ¶¶ 32-34). This dialogue included offers of accommodations such as an extended period of unpaid leave or transfer to a position in inside sales. (*Id*. ¶¶ 32-34). Additionally, Plaintiff's experience with Defendants should have created an expectation that further accommodations for absence would be in the form of quota

relief. Ultimately, there is no evidence on the record that Defendants failed to engage in cooperative dialogues with Plaintiff. This claim is likewise dismissed.

V.     Aider and Abettor Liability

Plaintiff also alleges that Defendants Spillman, Delmas, and Maguire are liable under aider and abettor liability. (FAC ¶¶ 44, 47, 52; Pl. Br. at 31). "In order for a defendant to be liable as an aider and abettor under § 296(6) of the NYSHRL, a plaintiff must first establish the existence of a primary violation of the NYSHRL by an employer or principal." *Alvarado v. United Hospice, Inc.*, No. 20-CV-10790, 2022 WL 4485379, at *21 (S.D.N.Y. Sept. 27, 2022) (citing *Forrest v. Jewish Guild for the Blind*, 819 N.E.2d 998 (N.Y. 2004)). Plaintiff has failed to establish the existence of a primary violation of the NYSHRL, as discussed *supra*, and as such there can be no aiding and abetting liability.

Accordingly, the Court grants Defendants summary judgment with respect to Plaintiff's aiding and abetting claims against Spillman, Delmas, and Maguire.

## CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is GRANTED. Plaintiff's First Amended Complaint is dismissed with prejudice and in its entirety.

The Clerk of Court is respectfully requested to terminate the pending motion sequence (Doc. 59) and close this case.


SO ORDERED:

Dated: White Plains, New York
          September 11, 2023

_____
Philip M. Halpern
United States District Judge